[No. A087880. Second Dist., Div. Four. Dec. 29, 2000.]

JOHN P. CONLEY, Plaintiff and Appellant, v.
ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO et al.,
Defendants and Respondents.

**COUNSEL**

Law Offices of John E. Hill, John E. Hill and Michael P. Guta for Plaintiff and Appellant.

Tobin & Tobin, Lawrence R. Jannuzzi and Paul E. Gaspari for Defendants and Respondents.

## OPINION

**HANLON, P. J.**—The trial court sustained a demurrer to the complaint of the Reverend John P. Conley (appellant) without leave to amend. Appellant contends that the trial court erred in finding that the complaint presented an ecclesiastical dispute not within the jurisdiction of civil authority. We conclude that judicial review of appellant's causes of action is permissible in light of the strong compelling state interests enunciated by the Child Abuse and Neglect Reporting Act (Pen. Code,[1] § 11164 et seq.) and therefore reverse.

### FACTUAL BACKGROUND

As this appeal arises after the sustaining of a demurrer, the general rule is that we "assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn therefrom." (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 3 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083].)

On November 6, 1997, appellant witnessed an incident of suspected child abuse involving Father James W. Aylward, the pastor of Saint Catherine of Siena Parish Church, and a minor child. He reported the incident to church and law enforcement officials. Aylward subsequently admitted wrestling with the minor child in contravention of respondent the Roman Catholic Archbishop of San Francisco's rules prohibiting certain activities between the clergy and minors. As appellant alleges, respondent retaliated against him for reporting the incident by discrediting his report to law enforcement officials. Respondent relieved appellant of his duties and put him on administrative leave. Respondent falsely reported to other clergy and members of the archdiocese that appellant committed inappropriate conduct during church functions and demanded that appellant submit to a psychological evaluation. Finally, on April 5, 1998, respondent caused a letter to be published in the San Francisco Examiner in which respondent's director of communications falsely accused appellant of engaging in a witch hunt against Aylward.

On December 18, 1998, appellant filed a complaint against respondent alleging intentional infliction of emotional distress and defamation. Appellant alleged that respondent's actions caused him severe emotional distress and that its statements to other clergy and members of the archdiocese and published statements in the newspaper injured his reputation. Respondent demurred to the complaint contending that the court lacked subject matter

---

[1]Unless otherwise indicated, all subsequent statutory references are to the Penal Code.

jurisdiction and that its actions were constitutionally privileged. The trial court initially overruled the motion. Respondent, however, moved for reconsideration, relying on *Schmoll v. Chapman University* (1999) 70 Cal.App.4th 1434 [83 Cal.Rptr.2d 426], a case decided the same day as the court's order. The *Schmoll* court held that the establishment and free exercise clauses of the First Amendment barred judicial review of a minister's claim of retaliation for reporting student complaints of sexual harassment. (*Id.* at p. 1436.) The trial court granted respondent's motion in light of the *Schmoll* opinion and sustained the demurrer without leave to amend.

## DISCUSSION

Preliminarily, we note that appellant purports to appeal from an unappealable order. An order sustaining a demurrer is interlocutory and not appealable. (*Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 780 [67 Cal.Rptr.2d 357].) The appeal must be taken from a subsequent judgment of dismissal. (*Ibid.*) This appeal, however, has been fully briefed by both parties. This court, in the interests of justice and to prevent unnecessary delay, will therefore deem the order sustaining the demurrer as incorporating a judgment of dismissal and treat appellant's notice of appeal as applying to that judgment. (*Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1440-1441 [2 Cal.Rptr.2d 683].)

Appellant contends that the trial court abused its discretion in sustaining the demurrer to his complaint without permitting him an opportunity to amend. He argues that his claims for emotional distress and defamation are unrelated to church functions and thus that they do not implicate the First Amendment.

While it is well settled that "civil courts may not involve themselves in reviewing the termination of clergy for theological or disciplinary reasons" (*Higgins v. Maher* (1989) 210 Cal.App.3d 1168, 1173 [258 Cal.Rptr. 757]), it is acknowledged that churches and their congregations and hierarchy "are as amenable as other societal entities to rules governing property rights, torts and criminal conduct" (*id.* at p. 1170; see also *Watson v. Jones* (1872) 80 U.S. 679, 732-733 [20 L.Ed. 666, 677-678). Here, the issue is whether the court may enforce the Legislature's mandate that clergy members are not subject to sanction for making reports of suspected child abuse under section 11166. We conclude that the issues posed by appellant's complaint are subject to judicial review. To hold otherwise and thus relieve respondent of any liability for a violation of section 11166 would be contrary to the legislative intent in amending the statute to include clergy within its ambit.

In 1980, the Legislature enacted the Child Abuse Reporting Law (§ 11165 et seq.), a statutory scheme of mandatory reporting requirements designed to increase the likelihood of identifying child abuse victims. (*Stecks v. Young* (1995) 38 Cal.App.4th 365, 371 [45 Cal.Rptr.2d 475].)[2] In 1987, the Legislature renamed the law the Child Abuse and Neglect Reporting Act (the Act) (§ 11164). (Stats. 1987, ch. 1444, § 1.5, p. 5369.) This comprehensive statutory scheme reflects the state's compelling interest in preventing child abuse and protecting children. (*Stecks v. Young, supra,* at p. 371.) "The objective has been to identify victims, bring them to the attention of the authorities, and, where warranted, permit intervention. [Citation.] Committed to the belief that reporting requirements protect children, the Legislature consistently has increased, not decreased, reporting obligations and has afforded greater, not less, protection to mandated reporters whose reports turn out to be unfounded." (*Ibid.*) To that end, in 1996, the Legislature amended section 11166 to add clergy members to those mandated to report known or suspected instances of child abuse to child protective agencies. (Stats. 1996, ch. 1081, § 3.5.) ▬▬ In adding clergy to the list of mandated reporters, the Legislature intended to address the reluctance of some religious institutions to report child abuse, to train clergy to recognize and address child abuse, and to afford clergy the immunity of mandated reporters. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3354 (1995-1996 Reg. Sess.) as amended June 26, 1996; see also Sen. Com. on Criminal Proc., Analysis of Assembly Bill No. 3354 (1995-1996 Reg. Sess.) as amended June 26, 1996.)[3]

 Section 11166, subdivision (c)(1) thus provides in pertinent part that "any clergy member who has knowledge of or observes a child, in his or her professional capacity or within the scope of his or her duties, whom he or she knows or reasonably suspects has been the victim of child abuse, shall report the known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible by telephone and shall prepare and send a written report thereof within 36 hours of receiving the information concerning the incident. . . ."[4] Section 11166 also protects mandatory reporters from suffering any sanction for complying with the statute. ▬▬ Subdivision (h) of section 11166 provides that "[t]he

---

[2]Former section 11161.5 imposed certain requirements on physicians and surgeons to report suspected abuse. (*Stecks v. Young, supra,* 38 Cal.App.4th at pp. 370-371.)

[3]"Statements of legislative committees pertaining to the purpose of legislation are presumed to express the legislative intent of statutes as enacted." (*Altaville Drug Store, Inc. v. Employment Development Department* (1988) 44 Cal.3d 231, 238 [242 Cal.Rptr. 732, 746 P.2d 871].)

[4]Subdivision (c)(2) of section 11166 exempts clergy members who acquire knowledge or reasonable suspicion of child abuse during a penitential communication.

reporting duties under this section are individual, and no supervisor or administrator may impede or inhibit the reporting duties, and no person making a report shall be subject to any sanction for making the report. . . ."[5]

Appellant contends that he was sanctioned for complying with his mandatory duty under section 11166 and that respondent's violation of subdivision (h) of the statute constitutes an "outrageous act" sufficient to support a cause of action for intentional infliction of emotional distress. This contention has merit.

In order to determine whether appellant's claim is subject to judicial review, we must inquire whether the state's interest in enforcing section 11166 is of "sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." (*Wisconsin v. Yoder* (1972) 406 U.S. 205, 214 [92 S.Ct. 1526, 1532, 32 L.Ed.2d 15].) We conclude that the balance weighs in favor of the state's interest in protecting children.

In amending the Act to include clergy members as mandated reporters, the Legislature determined that requiring clergy members to report suspected cases of child abuse was necessary to further the Act's purpose of protecting children from abuse. (See §§ 11164, 11166.) In *People v. Hodges* (1992) 10 Cal.App.4th Supp. 20 [13 Cal.Rptr.2d 412], the court upheld application of the Act to clergy members against a challenge that the Act violated the free exercise of religion and establishment clauses of the First Amendment. In *Hodges*, the court affirmed the conviction of a pastor and assistant pastor of a church for violating section 11166, subdivision (a) by failing to report an incident of molestation. (10 Cal.App.4th at p. Supp. 34.) The court held that the Act's compelling state interest in protecting children from child abuse justified any burden on the pastors' religious practice and that there were no less intrusive means of achieving the state's interest. (*Id.* at pp. Supp. 32-33.) The court further held that the statute was limited in its intrusiveness and therefore did not constitute an excessive entanglement with religion. (*Id.* at pp. Supp. 33-34.)

We agree with the *Hodges* court that the statute as applied does not violate the free exercise clause of the First Amendment nor does it constitute an excessive government entanglement with religion. The Act clearly applies to clergy members, is limited in scope and furthers the compelling state interest

---

[5] In addition, the Act confers absolute immunity upon a mandated reporter. Section 11172, subdivision (a) provides immunity from civil or criminal liability for persons making any reports " ' "required or authorized" ' " by the statute. (*Stecks v. Young, supra,* 38 Cal.App.4th at p. 372.)

of protecting children from abuse. This interest is significant and outweighs the burden on respondent's free exercise rights. Moreover, respondent, by seeking to shield its actions from scrutiny, would prevent appellant from obtaining the benefit of the protections afforded mandatory reporters under section 11166. A critical component of the statutory scheme is to require mandatory reporting but to protect those reporters from being subject to any sanction for their reports. (§ 11166, subd. (h).) To permit respondent to escape scrutiny for its actions would be contrary to the legislative intent in amending section 11166 to include clergy members as mandatory reporters.

*Schmoll v. Chapman University, supra,* 70 Cal.App.4th 1434 is distinguishable from the case here. The *Schmoll* court held that judicial review of a minister's claim that she was retaliated against for reporting instances of sexual harassment in violation of the Fair Employment and Housing Act (FEHA) was precluded under the First Amendment. (*Id.* at pp. 1438-1442.) The court found that the state's interest in FEHA did not override the church-affiliated university's interest in making decisions relating to the hiring, firing, discipline or administration of clergy. (*Id.* at p. 1442.) Here, however, the Legislature has clearly indicated that clergy are mandatory reporters entitled to the protections of subdivision (h) of section 11166. FEHA, in contrast, has a specific exemption for employers that are religious entities that are not organized for private profit. (See Gov. Code, § 12940, subd. (h)(3)(B).)[6] In addition, unlike *Schmoll,* this case is not a wrongful termination action. Appellant pleads causes of action for intentional infliction of emotional distress and defamation.

In sum, appellant's cause of action based on respondent's violation of the act is subject to judicial review. Appellant's allegation that the violation constitutes outrageous conduct sufficiently supports his emotional distress claim. ■ The elements of a prima facie case of intentional infliction of emotional distress consist of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of the defendant's outrageous conduct. (See *Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975].) "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Ibid.*) ■ Here, appellant's allegation that respondent sanctioned him because he made a report under section 11166 is clearly an act that would reasonably

---

[6]The *Schmoll* court did not rely on the exemption in concluding that judicial review of the FEHA claim was precluded. (*Schmoll v. Chapman University, supra,* 70 Cal.App.4th at pp. 1437, 1442.)

support a finding of outrageous conduct. The trial court thus erred in sustaining the demurrer on this cause of action.

Further, appellant has sufficiently plead a cause of action for defamation. He alleges that respondent caused a letter to be published in the San Francisco Examiner which stated that appellant's report to law enforcement officials was part of a "witch hunt" against Aylward. Here, again, the cause of action is not directed to any decision by respondent to discipline or terminate appellant but to appellant's exercise of his duty as a mandatory reporter under section 11166. "The commission of a common law tort in the name of or under the auspices of a church does not lessen its culpability." (*Higgins v. Maher, supra,* 210 Cal.App.3d at p. 1175.)

### DISPOSITION

The judgment is reversed with directions to overrule the demurrer. Appellant shall recover his costs on appeal.

Sepulveda, J., and Woolard, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied March 28, 2001. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.

---

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.